Sandra L. FERGUSON, Respondent,

v.

ILLINOIS FARMERS INSURANCE
GROUP CO., Appellant,

and

Kenneth Eichten and Stanley
Eichten, Respondents,

Patrick Ferguson, Defendant.

No. CO–83–322.

Supreme Court of Minnesota.

May 11, 1984.

Ruth Ann Webster, New Ulm, for appellant.

Stephen P. Rolfsrud, Mankato, for respondent Ferguson.

John M. Sheran, Mankato, for respondents Eichten.

TODD, Justice.

Sandra L. Ferguson was a passenger in the family car driven by her husband when it was struck from the rear by a vehicle driven by Kenneth Eichten and owned by Stanley Eichten. Illinois Farmers Insurance Company, the no-fault carrier on the Ferguson vehicle, paid certain medical and wage loss benefits. Illinois Farmers ceased paying wage benefits and Sandra Ferguson brought an action against Illinois Farmers. She also had commenced action against Kenneth and Stanley Eichten. The matters were consolidated for trial. The jury awarded Sandra Ferguson $120,667.99 total damages. Included in this award was the sum of $11,046.90 for lost wages, $4,621.29 for medical expenses to the date of trial, and $10,000 for future medical expenses. Kenneth Eichten was found 95% negligent and Patrick Ferguson was found 5% negligent.

The trial court, based on the jury verdict, ordered judgment against Kenneth and Stanley Eichten in the amount of $91,-823.03, against Patrick Ferguson in the amount of $4,832.79 and against Illinois Farmers in the amount of $14,957.16. We reverse as to the manner and the amounts of judgment entered against the defendants.

The trial court used the following reasoning in entering the judgment:

Of the total jury verdict assessing damages in the sum of $120,667.99 the jury included $11,046.90 for past wage loss, $4,621.29 for past medical expense, and $10,000.00 for future medical expense. Deducting the total of those three items of $25,669.19, the balance of general damages was the sum of $94,-998.80. Of such amount 95% is to be assessed against the defendants Kenneth Eichten and Stanley Eichten being the sum of $90,248.86. Of such amount 5% is to be assessed against the defendant Patrick Ferguson, being the sum of $4,749.94. As the no-fault carrier, Illinois Farmers Insurance Company, is primarily responsible for a limit of 85% of the past wage loss, 15% of the past wage loss is to be assessed between the defendants Kenneth Eichten and Stanley Eichten as to 95% thereof, and Patrick Ferguson as to 5% thereof, 15% of the past wage loss of $11,046.90 is the sum of $1,657.03. Of such amount there is to be assessed 95% or $1,574.17 as to the defendants Kenneth Eichten and Stanley Eichten. The balance of 5% or $82.85 is to be assessed against the defendant Patrick Ferguson.

The judgment to be entered against the defendants Kenneth Eichten and Stanley Eichten is in the principal sum of

$90,248.86 plus $1,574.17, for a total of $91,823.03.

The judgment to be entered against the defendant Patrick Ferguson is in the principal sum of $4,749.94 plus $82.85, for a total of $4,832.79.

85% of the past wage loss of $11,-046.90, or the sum of $9,389.91, is the liability of the no-fault carrier, the defendant Illinois Farmers Insurance Company. Of such sum the no-fault carrier is entitled to credit for the amount paid prior to trial in the sum of $4,432.75, leaving a balance due of $4,957.16. The no-fault carrier is also liable for the future medical payments due in the sum of $10,000.00. Total judgment to be entered against said defendant is then the sum of $14,957.16.

A recapitulation of the amounts paid and to be paid as the result of judgments ordered is as follows:

| | |
|---|---:|
| Judgment against Eichtens | $ 91,823.03 |
| Judgment against Ferguson | 4,832.79 |
| Judgment against Illinois Farmers | 14,957.16 |
| Credit for past medical paid | 4,621.00 |
| Credit for past wage loss paid | 4,432.75 |
| Total | $120,666.73 |
| Verdict | *$120,667.99 |

* The discrepancy between the total damages and the verdict arises out of application of percentages.

■ 1. The trial court's calculations in this case are cumbersome and erroneous. A restatement of the award is necessary. Judgment based upon the verdict was $120,667.99. From this amount there must be deducted the sum of $9,054.04 representing past medical expenses and past wage losses paid by Illinois Farmers. The jury determined that the past wage losses amounted to $11,046.90. Under its no-fault policy Illinois Farmers is obligated to pay 85% of this amount which is $9,389.87 less a credit for the sum of $4,432.75 for past wages already paid leaving a balance due from Illinois Farmers of $4,957.12. This amount is deducted from the previous balance of $111,613.95 leaving a balance due of $106,656.83. Of this amount the defendants Eichtens are responsible for $101,-

323.98 or 95% thereof and the defendant Ferguson is responsible for $5,332.85 or 5% thereof. Illinois Farmers is not entitled to indemnity for the amounts it has previously paid for wage loss and medical expenses nor for the amount of the judgment against it on that portion of the verdict allocating past wage losses. This arises because the Minnesota No-Fault Act provides indemnity only if a commercial vehicle is involved, which is not the case here.

2. In making its judgment the trial court deducted the $10,000 future medical expenses for the judgment to be paid by the tortfeasor and assigned them for payment by the no-fault carrier. This was ostensibly done pursuant to Minn.Stat. § 65B.51, subd. 1 (1982) which provides:

Subdivision 1. **Deduction of basic economic loss benefits.** With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, there shall be deducted from any recovery the value of basic or optional economic loss benefits paid or payable or which will be payable in the future, or which would be payable but for any applicable deductible.

This provision was interpreted by this court in the case of *Haugen v. Town of Waltham*, 292 N.W.2d 737 (Minn.1980). In *Haugen*, the plaintiff driver sued the Town of Waltham for not posting a sign warning that a road ended by coming to a "T". The trial court awarded damages and deducted future damages from the verdict. Haugen appealed, arguing that he had no assurance that his no-fault carrier would pay the future benefits deducted from his present award since it had not been a party to the trial. This court held that to deduct these future damages when the no-fault carrier has not been a party to the proceedings would infringe on the constitutional right of plaintiff to have "a certain remedy in the laws," which shall "completely" allow such person to obtain justice. 292 N.W.2d at

740 citing Minn. Const. art. 1, § 8. The court found that deducting the future damages from this tort recovery would impose upon the successful litigant an incomplete remedy which lacks certainty. *Id.*

This court in *Haugen* also suspended the operation of Minn.Stat. § 65B.51 as to the deduction of future economic loss benefits until the legislature addresses the problem. The trial court in the case presently on appeal dealt with *Haugen* by limiting its holding. The trial court deducted future economic loss benefits from the tort recovery and assigned them to the no-fault carrier notwithstanding the *Haugen* language suspending the operation of Minn.Stat. § 65B.51, subd. 1 (1982). It found that *Haugen* was limited to its own facts since the no-fault carrier was not a party to the original trial. The trial court distinguished the instant case because the no-fault carrier was a party to the proceedings and, therefore, the plaintiff's constitutional rights were not infringed as in *Haugen.*

 The holding in *Haugen* is much broader than is suggested by the trial court in this case. *Haugen* suspended the setoff provisions of Minn.Stat. § 65B.51, subd. 1, in all cases, not just those in which the no-fault carrier is not a party to the litigation against the tortfeasor. This court held:

> Although this provision may clearly be consistent with the purposes of the act, its application poses numerous problems. The statute is silent as to how future loss benefits to be payable in the future may be determined with any reasonable degree of accuracy. This case presents the issue in a very narrow context since the jury has specifically determined the monetary amount attributable to future medical damages. However, the no-fault carrier of the successful plaintiff in this case is not a party to the action. Thus, the plaintiff has no assurance that his insurance carrier will accept the amount of damages awarded, let alone that it will accept responsibility for such damages. If the no-fault carrier contests these matters, then the successful plaintiff must

relitigate his claim under the arbitration provisions of his policy.

\*　　\*　　\*　　\*　　\*　　\*

> Thus, we conclude that while the language of the statute comports with the stated legislative purposes of preventing double recovery, the lack of feasible, constitutionality permissible legislative enactments establishing guidelines for the effective administration of the proposed deduction preclude the courts from the literal enforcement of the statute. Further, the lack of guidelines makes the application of the deduction inequitable and unjust upon successful litigants. The provisions of Minn.Stat. § 65B.51 as to the deduction of future economic loss benefits shall be unenforceable pending further legislative enactments relating to this subject matter.

292 N.W.2d at 740–41 (footnotes omitted). The presence of the insurer in this suit does not alter the holding in *Haugen.* The entry of a *money* judgment against the no-fault carrier is not mandated at this time since the tortfeasor is responsible for respondent's losses.

We reverse the trial court's holding as it interpreted *Haugen.*

Applying the principle of the no-fault law which seeks to prevent double recovery, we conclude that the plaintiff must first exhaust her net award of future medical damages; that is, the sum of $10,000 less costs of collection including reasonable attorney's fees. When she has accumulated future medical expenses related to the injury which exhaust the net amount of recovery, she can then recover from the no-fault carrier any additional future medical expenses. The no-fault carrier's exposure is limited under its policy to $20,000.00 minus the $4,621.29 it has already paid plaintiff for medical expenses.

The fact that the jury awarded $10,000 as a lump sum estimate of future medical expenses will not put a cap on the amount plaintiff can recover against its no-fault carrier. The reimbursement of actual expenses is what the No-Fault Act provides.

Nor do we find any problem as a result of the language in Minn.Stat. § 65B.55, subd. 2 which provides that an insurance policy may terminate eligibility for benefits after a prescribed period of lapse of disability and medical treatment, which period shall not be less than one year. There may be occasions where plaintiff may not need treatment for a period of more than one year. However, when a jury determines that an insured has incurred future medical disability, this precludes a lapse of disability and prevents enforcement of any policy provision adopted pursuant to § 65B.55, subd. 2.

The matter is remanded to the trial court with instructions to enter judgment against the defendants Eichtens in the amount of $101,323.98 and against the defendant Ferguson in the amount of $5,332.85. Judgment shall also be entered against Illinois Farmers in the amount of $4,957.12 together with a judgment for future medical expenses consistent with this opinion.

Reversed and remanded.