Rochelle Lynn PEMBERTON,
Respondent,

v.

Lori Ann THEIS, Appellant.

No. C4–03–313.

Court of Appeals of Minnesota.

Sept. 16, 2003.

John S. Raboin, Raboin & Aakhus Olson Law Offices, P.A., Baxter, MN, for respondent.

Steven F. Lamb, Fargo, ND, for appellant.

Paul D. Peterson, Harper & Peterson, P.L.L.C., Woodbury, MN, for amicus curiae Minnesota Trial Lawyers Association.

Considered and decided by HUDSON, Presiding Judge; WILLIS, Judge; and ANDERSON, Judge.

## OPINION

HUDSON, Judge.

In this negligence action arising out of an automobile accident, the jury awarded damages for future medical expenses. The trial court, after a posttrial collateral sources motion, reduced the award for future medical expenses by the amount of basic economic loss benefits the plaintiff had received in settlement with her no-fault insurer, and further reduced the award in proportion to plaintiff's attributable fault. On appeal, appellant Lori Ann Theis contends that respondent Rochelle Pemberton is not entitled to the future medical expense award because (a) she entered into a release of all no-fault benefits, including future medical expenses, before trial; (b) she failed to meet the required no-fault tort threshold under Minn. Stat. § 65B.51, subd. 3 (2002), which applies to future medical expenses; and (c) the trial court should have deducted the full amount of future medical expenses awarded from the jury's verdict. Pemberton filed a notice of review, claiming that the trial court improperly deducted the amount received in a no-fault settlement from the future medical-expense award. Because we conclude that (a) the release signed by the plaintiff with her no-fault insurance company does not preclude her from suing the defendant for negligence; (b) an award of future medical expenses constitutes economic loss and thus is not subject to the tort threshold under Minn. Stat. § 65B.51, subd. 3 (2002); and (c) the district court did not err in deducting the

amount received as a no-fault settlement from the future medical-expenses verdict, we affirm.

## FACTS

This case arises out of a low-speed motor vehicle accident that occurred on August 22, 1998, when a vehicle driven by appellant Lori Ann Theis rear-ended a vehicle driven by respondent Rochelle Lynn Pemberton. Theis, who had stopped at a stoplight, proceeded immediately after the light turned green, hitting Pemberton's car, which was still stopped in front of Theis. As a result of the accident, Pemberton suffered neck pain with a cervical strain.

In February 2001 Pemberton signed a release with her no-fault automobile insurer, State Farm Mutual Automobile Insurance Company (State Farm), stating that for consideration paid of $2,331, she released State Farm from

> any further claims, known or unknown, now existing or arising in the future, for medical expense, disability and income loss, or replacement service benefits

under her no-fault policy. The release also contained a provision stating that Pemberton reserved the right to pursue "any liability and underinsured benefits [she] may have."

Six months later, Pemberton sued Theis for negligence as a result of the injuries she sustained in the accident. After a jury trial, the jury issued a special verdict apportioning negligence 80% to Theis and 20% to Pemberton. The jury found that Pemberton sustained no permanent injury as a result of the collision and awarded the following sums for past damages incurred:

| | |
|---|---|
| Past pain, disability, and emotional distress | $2,000 |
| Past health care expenses | $3,100 |
| Diagnostic testing | $2,366. |

For future damages, the jury awarded the following:

Future pain, disability, and emotional distress $2,500

Future health care expenses $5,000.

Theis timely requested determination of collateral source benefits pursuant to Minn.Stat. § 548.36 (2002) and Minn.Stat. § 65B.51, subd. 2 (2002). The trial court concluded that the plaintiff did not meet the required tort thresholds for past pain, disability, and emotional distress; for past health care expenses; or for future pain, disability, and emotional distress.

In addition, the district court found that (a) in accordance with the special jury verdict, $5,000 would fairly compensate the plaintiff for future health care expenses; (b) plaintiff signed a full and fair release of all no-fault benefits in consideration of the sum of $2,331; and (c) the award for future health care expenses was subject to the deduction for basic economic benefits paid or payable in accordance with Minn. Stat. § 65B.51.

The district court then deducted the $2,331 given as consideration for the release as economic benefits previously paid, reducing the jury's award of future health care expenses from $5,000 to $2,669. The court also ordered that this award be further reduced by 20% for the plaintiff's comparative fault, so that the plaintiff was entitled to judgment in the amount of $2,135.20, together with costs and disbursements.

## ISSUES

I. Does a plaintiff's settlement and release of claims as to her no-fault insurance company preclude her from maintaining an action in negligence as permitted by the Minnesota No–Fault Insurance Act?

II. Do future medical expenses constitute economic loss not subject to a tort threshold under Minn.Stat. § 65B.51, subd. 3 (2002)?

III. Did the district court err in deducting the amount of a plaintiff's settlement with her no-fault insurer from a jury verdict for future medical expenses?

## ANALYSIS

### I

■ Analysis of the issues in this case requires interpretation of the Minnesota No–Fault Insurance Act, Minn.Stat. §§ 65B.41–.71 (2002). Statutory interpretation is a legal question, which this court reviews de novo. *Brookfield Trade Ctr. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). The trial court's application of a statute to undisputed facts presents a conclusion of law that is fully reviewable by this court. *A.J. Chromy Constr. Co. v. Commercial Mech. Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977); *Johnson v. State Farm Mut. Auto. Ins. Co.*, 574 N.W.2d 468, 470 (Minn.App.1998).

Appellant Theis contends that the release signed by respondent Pemberton with her no-fault insurance company, State Farm, discharges the jury verdict for future medical expenses, since Pemberton explicitly released State Farm from liability for any further claim for medical expenses. "A release has been defined as a relinquishment, concession, or giving up of a right, claim, or privilege by the person in whom it exists to the person *against whom it might have been enforced.*" *Danelski v. King*, 314 N.W.2d 818, 820 (Minn.1981) (emphasis added). In this case, neither Theis nor her insurer, American Family Insurance Company, was a party to the release, nor paid consideration for the terms. Therefore, neither Theis nor American Family were parties against whom the release could be enforced. Nor did Pemberton express any intent in the

release to give up any liability claim against Theis or American Family. In fact, the release states that Pemberton expressly reserved the right "to pursue any liability and underinsured benefits [she] may have." *See, e.g., Couillard v. Charles T. Miller Hosp.*, 253 Minn. 418, 427, 92 N.W.2d 96, 102 (1958) (noting that "considerations of practical justice" require that plaintiff not be compelled to give up a claim for relief unless he has intentionally done so, or has received full compensation for the claim). We conclude that Pemberton did not intend to give up her claims against Theis, nor had she received full compensation for her claim of future medical expenses.

We also note, the fundamental distinction, in the no-fault insurance structure, between Pemberton's claim for recovery of benefits from her own no-fault insurer and her right to sue Theis for negligence for her personal injuries. In *Nelson v. Am. Family Ins. Group*, 651 N.W.2d 499 (Minn.2002), the Minnesota Supreme Court declined to apply the doctrines of res judicata, collateral estoppel, or accord and satisfaction in an action by an insured to recover no-fault benefits from her insurance company when the insurance company had previously satisfied a tort judgment of liability as the liability carrier for the tortfeasor. *See also Balderrama v. Milbank Mut. Ins. Co.*, 324 N.W.2d 355 (Minn. 1982) (holding that accident victim's prior settlement of his common-law liability claim did not bar his claim for no-fault insurance benefits). Therefore, we conclude that Pemberton's release of State Farm, her no-fault insurer, for benefits attributable to future medical expenses, did not operate to release any claim in tort asserted against Theis. Accordingly, the release has no effect on the jury's verdict for future medical expenses.

## II

■ Theis challenges the jury's award of future medical expenses on the basis that these expenses constitute noneconomic detriment, which are subject to the tort threshold under the no-fault act, so that Pemberton is precluded from bringing an action for negligence because her claim did not meet the applicable tort threshold. Under Minn.Stat. § 65B.51, subd. 2 (2002), uncompensated economic loss is recoverable in negligence as follows:

> A person may bring a negligence action for economic loss not paid or payable by a reparation obligor or through the assigned claims plan because of any lack of insurance coverage for the economic loss described in section 65B.44, daily or weekly dollar limitations of section 65B.44, the seven-day services exclusion of 65B.44, the limitations of benefits contained in section 65B.44, subdivision 1, or an exclusion from coverage by sections 65B.58 to 65B.60.

Claims for noneconomic detriment, however, must meet a tort threshold before a negligence action is permitted. Minn.Stat. § 65B.51, subd. 3 (2002), further provides, in part, that "no person shall recover damages for noneconomic detriment" unless a $4,000 tort threshold is met. The no-fault act contains no provision for a tort threshold for economic loss. *See Nemanic v. Gopher Heating & Sheet Metal, Inc.*, 337 N.W.2d 667, 670 (Minn.1983) (noting that "only noneconomic loss is subject to a tort threshold under the no-fault act").

Theis argues that the list of economic losses in Minn.Stat. § 65B.51, subd. 2, is exclusive—in other words, that because future medical expenses are not expressly listed in subdivision 2, they do not constitute economic loss under the act for which an injured party may bring a negligence action. Therefore, she claims that once the district court found that a tort thresh-

old was not met, the action in negligence could not be maintained, and the future medical expenses awarded by the jury could not be recovered under the act.

In order to determine whether future medical expenses are properly considered economic losses within the framework of the Minnesota No–Fault Act, we look directly to the language of the act to interpret its provisions. *See Occhino v. Grover,* 640 N.W.2d 357, 359 (Minn.App.2002) (citing to Minn.Stat. § 645.16, plain-meaning rule), *review denied* (Minn. May 28, 2002). In so doing, we examine "the context of the statutory provision, or the plain meaning within the whole act." *Id.* at 361. Minn.Stat. § 65B.43, subd. 7 (2002), states that, in the context of the no-fault act,

> [l]oss means economic detriment resulting from the accident causing the injury, consisting only of *medical expense,* income loss, replacement services loss, and, if the injury causes death, funeral expense, survivor's economic loss and survivor's replacement services loss. Noneconomic detriment is not loss; however, economic detriment is loss although caused by pain and suffering or physical or mental impairment.

(Emphasis added.) We conclude that medical expenses are clearly economic losses. On the other hand, "noneconomic detriment" is defined as "all dignitary losses ... including pain and suffering, loss of consortium, and inconvenience." Minn. Stat. § 65B.43, subd. 8 (2002). Future medical expenses, although they may relate to dignitary losses, are not themselves losses for pain and suffering, but instead future expenses projected to be incurred for any kind of medical condition. Therefore, reading subdivisions 7 and 8 together within the context of the act, we conclude that under the plain language of the no-fault statute, future medical expenses constitute economic loss rather than noneconomic detriment. On that basis, we conclude that Pemberton's claim for future medical expenses was not subject to a tort threshold.

Our holding today is supported by prior decisions of this court that have effectively treated future medical expenses as economic loss under the no-fault act. *See Johnson,* 574 N.W.2d at 472 (holding that jury award for past medical expenses, past wage loss, and future medical expenses included award "only for *economic* damages") (emphasis in original); *Ward v. Ward,* 453 N.W.2d 729, 732 (Minn.App. 1990) (stating that compensation for future medical expenses and loss of future earning capacity, through settlement of personal injury suit, are economic damages, as opposed to noneconomic damages for pain and suffering), *review denied* (Minn. June 6, 1990); *see also Marose v. Hennameyer,* 347 N.W.2d 509, 511 (1984) (noting that the plaintiff "claimed future economic loss in the form of future medical expenses"). Theis points out that this court in *Marose* affirmed summary judgment for the defendant on the issue of future medical expenses, discussing the issue of whether the plaintiff had sustained permanent injury. *Id.* at 511. But the *Marose* court discussed the plaintiff's claim in the context of economic loss benefits and based its holding on the determination that she had not provided sufficient evidentiary support for her future-medical-expense claim. *Id.*

Theis further claims that future medical expenses are not properly considered in computing a tort threshold pursuant to *Coughlin v. LaBounty,* 354 N.W.2d 48, 52 (Minn.App.1984), *review denied* (Minn. Jan. 9, 1985). But in *Coughlin,* this court held only that future medical expenses may not be included for the purpose of meeting the tort threshold for *noneconomic* detriment under Minn.Stat. § 65B.51, subd. 3. *Id.* at 53. The court did not

address the issue of future medical expenses as economic loss or noneconomic detriment.

The Minnesota Supreme Court has also discussed future medical expenses in the context of economic loss benefits in *Ferguson v. Illinois Farmers Ins. Group Co.*, 348 N.W.2d 730, 733 (Minn.1984). In *Ferguson*, the supreme court concluded that, consistent with the purpose of preventing double recovery, a no-fault insurer receives credit for the future medical expenses awarded by a jury, and the plaintiff may recover from a no-fault insurer only after she has accumulated future medical expenses exceeding the net award of future medical damages from the tortfeasor. *See also Simpson v. Am. Family Ins. Co.*, 603 N.W.2d 860 (Minn.App.2000) (applying rationale in *Ferguson* to no-fault wage-loss benefits). Therefore, although Theis contends that Minn.Stat. § 65B.51, subd. 2, contains an exclusive list of economic losses, Minnesota appellate courts have considered both claims for future medical expenses and for loss of future earning capacity without discussing the applicability of a tort threshold. *See Ferguson*, 348 N.W.2d at 733; *Simpson*, 603 N.W.2d at 863. We recognize that allowing claims for future medical expenses without requiring satisfaction of one of the tort-threshold requirements may well lead to increased litigation, but the legislature has not acted to bar these types of claims, and it is not this court's province to do so.

We therefore conclude that, pursuant to the plain language of the Minnesota No-Fault Act, future medical expenses are economic losses and therefore, are not subject to the tort-threshold requirements of Minn.Stat. § 65B.51, subd. 3. Accordingly, Pemberton was not required to demonstrate a tort threshold before suing in negligence to recover her uncompensated future medical expenses.

## III

Theis claims that the district court erred in not deducting the full amount of the $5,000 future medical-expense award from the jury's verdict because the expenses were "otherwise available" to the plaintiff as a collateral source under Minn. Stat. § 548.36, subd. 1(2) (2002), when Pemberton settled with her no-fault insurer. Minn.Stat. § 65B.51, subd. 1 (2002), provides that, in a negligence action: "The court shall deduct from any recovery the value of basic or optional economic loss benefits paid or payable, or which would be payable but for any applicable deductible." In this case, because of the settlement, recovery of the full amount of the $5,000 in future medical expenses is not "otherwise available" to the plaintiff. Therefore, the district court did not err in failing to deduct the full amount of the $5,000 from the recovery.

Pemberton also filed a notice of review, claiming that the district court improperly deducted the full $2,331 settlement with the no-fault insurer from the future medical-expense verdict, rather than a pro-rated amount. Pemberton argues that, absent evidence that the entire settlement amount was to be attributable to the category of medical expenses, the trial court should not have used the entire amount of the settlement to offset the future medical expense verdict. But the record was not fully developed on this issue, and it is difficult to determine how the trial court apportioned the settlement amount within the different categories of no-fault benefits. Based on the limited record before us, therefore, we cannot conclude that the district court erred in deducting the $2,331 settlement from the verdict for future medical expenses.

## DECISION

A plaintiff releasing a no-fault insurance company for claims arising out of a motor

vehicle accident does not give up the right to a negligence action against the tortfeasor when neither the tortfeasor nor the tortfeasor's insurance company were named in the release. Because future medical expenses constitute economic loss within the purview of Minn.Stat. § 65B.51, subd. 2 (2002), the plaintiff's future medical expenses were not subject to the tort threshold of Minn.Stat. § 65B.51, subd. 3 (2002). Finally, the trial court did not err by deducting the amount of the no-fault settlement received by the plaintiff from the future medical-expense verdict.

**Affirmed.**